554 So.2d 499 (1989)
VENETIAN SALAMI COMPANY, Etc., Petitioner,
v.
J.S. PARTHENAIS, Respondent.
No. 73848.
Supreme Court of Florida.
December 14, 1989.
Laurence H. Bartlett of Black, Crotty, Sims, Hubka, Burnett, Bartlett and Samuels, Daytona Beach, for petitioner.
Kenneth S. Davis, Gainesville, for respondent.
GRIMES, Justice.
We review Parthnais v. Venetian Salami Co., 538 So.2d 532 (Fla. 1st DCA 1989), because of conflict with Unger v. Publisher Entry Service, Inc., 513 So.2d 674 (Fla. 5th DCA 1987), review denied, 520 So.2d 586 (Fla. 1988); Scordilis v. Drobnicki, 443 So.2d 411 (Fla. 4th DCA 1984); and Osborn v. University Society, Inc., 378 So.2d 873 (Fla.2d DCA 1979). We have jurisdiction under article V, section 3(b)(3), of the Florida Constitution.
This case involves the circumstances under which Florida may obtain jurisdiction over a nonresident defendant pursuant to its long-arm statute. Because it is relevant to our discussion, the complaint filed in this case is reproduced in full:
The plaintiff, J.S. PARTHENAIS, sues the Defendant, VENETIAN SALAMI COMPANY, a foreign corporation, and says:

*500 1. This is an action for damages in an amount greater than Five Thousand and No/100 ($5,000.00) Dollars.
2. Plaintiff's principal place of business is Alachua County, Florida.
3. On or about March 30, 1987, officer of the Defendant corporation contacted Plaintiff in Alachua County, Florida, and engaged the services of the Plaintiff to assist the Defendant in determining the collectability and methods of collection of a large delinquent account due to Defendant.
4. The Defendant agreed to reimburse Plaintiff his expenses. Payment was to be made to Plaintiff at his place of business in Alachua County, Florida.
5. The Plaintiff performed the services, but the Defendant has refused to pay.
WHEREFORE, Plaintiff demands judgment against the Defendant for damages and costs of court.
Parthenais sought to obtain jurisdiction over Venetian Salami under section 48.193(1)(g), Florida Statutes (1987), which provides:
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
... .
(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.
Venetian moved to quash service of process for lack of jurisdiction over the defendant. Thereafter, the parties filed affidavits supporting their positions. The trial judge dismissed the suit on the ground that Parthenais had failed to establish that Venetian had sufficient minimum contacts with the State of Florida. The First District Court of Appeal reversed the order of dismissal. Acknowledging conflict among the district courts of appeal, the court held that jurisdiction may be obtained by meeting the statutory requirements of Florida's long-arm statute without the necessity of further showing that the defendant had sufficient minimum contacts with the State of Florida in order to satisfy due process. The court held that jurisdiction over Venetian Salami had been obtained because the complaint alleged facts sufficient to fall within the scope of section 48.193(1)(g) and that when these allegations were challenged, they were backed by affidavit. Accord Engineered Storage Systems, Inc. v. National Partitions & Interiors, Inc., 415 So.2d 114 (Fla.3d DCA 1982).
Long ago, the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), held that in order to subject a defendant to an in personam judgment when he is not present within the territory of the forum, due process requires that the defendant have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. More recently, the same Court stated that the test is whether the defendant's conduct in connection with the forum state is "such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).
In essence, the court below held that the requisite minimum contacts are built into section 48.193. Otherwise, the statute would be held unconstitutional. We respectfully disagree. By enacting section 48.193, the legislature has determined the requisite basis for obtaining jurisdiction over nonresident defendants as far as Florida is concerned. It has not specifically addressed whether the federal constitutional requirement of minimum contacts has been met. As a practical matter, it could not do so because each case will depend upon the facts.
The principle that the determination of minimum contacts will depend upon the facts was highlighted by the United States Supreme Court in Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In that case, Burger *501 King, a Florida corporation, sued a Michigan resident for breach of a franchise agreement. Burger King sought to obtain jurisdiction under section 48.193(1)(g) by asserting that the defendant failed to make required payments under the agreement in Florida. After rejecting the defendant's jurisdictional arguments, the trial court held a bench trial and entered judgment in favor of Burger King. The Eleventh Circuit Court of Appeals reversed, concluding that the court did not have personal jurisdiction over the defendant. On petition for certiorari, the United States Supreme Court observed:
At the outset, we note a continued division among lower courts respecting whether and to what extent a contract can constitute a "contact" for purposes of due process analysis. If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot. The Court long ago rejected the notion that personal jurisdiction might turn on "mechanical" tests, International Shoe Co. v. Washington, supra, 326 U.S., at 319, 66 S.Ct., at 159, or on "conceptualistic ... theories of the place of contracting or of performance," Hoopeston Canning Co. v. Cullen, 318 U.S., [313] at 316, 63 S.Ct., [602] at 604 [87 L.Ed. 777]. Instead, we have emphasized the need for a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." Id., at 316-317, 63 S.Ct., at 604-605. It is these factors  prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing  that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.
Id. at 478-79, 105 S.Ct. at 2185 (footnotes omitted). The Court then discussed the facts in detail and concluded that there was substantial record evidence to support the trial court's decision that the assertion of personal jurisdiction over the defendant in Florida did not offend due process. The Court went on to say:
We ... therefore reject any talismanic jurisdictional formulas; "the facts of each case must [always] be weighed" in determining whether personal jurisdiction would comport with "fair play and substantial justice." Kulko v. California Superior Court, 436 U.S. 84, at 92, 98 S.Ct. [1690], at 1696-1697 [56 L.Ed.2d 132 (1978)].[29] The "quality and nature" of an interstate transaction may sometimes be so "random," "fortuitous," or "attenuated" that it cannot fairly be said that the potential defendant "should reasonably anticipate being haled into court" in another jurisdiction.
[29] This approach does, of course, preclude clear-cut jurisdictional rules. But any inquiry into "fair play and substantial justice" necessarily requires determinations "in which few answers will be written `in black and white. The greys are dominant and even among them the shades are innumerable.'" Kulko v. California Superior Court, 436 U.S., [84] at 92, 98 S.Ct. [1690], at 1697,
471 U.S. at 485-86, 105 S.Ct. at 2189 (footnotes omitted). If Parthenais's position is correct, the United States Supreme Court engaged in an unnecessary exercise of factual analysis because the parties had stipulated before the court of appeals that the court had jurisdiction over the defendant for purposes of section 48.193. Id. at 470 n. 12, 105 S.Ct. at 2181 n. 12.
In a case involving an effort to obtain jurisdiction over a nonresident under section 48.193, the Fourth District Court of Appeal stated:
Admittedly, if the general principles of contract law can be applied so as to find a breach of the contract in Florida, then a literal reading of the statute would suggest that Florida has jurisdiction over the son-in-law. But, in our view, such an application of the statute would not pass constitutional muster.
Scordilis v. Drobnicki, 443 So.2d 411, 412 (Fla. 4th DCA 1984). In Unger v. Publisher Entry Service, Inc., 513 So.2d 674, 675 *502 (Fla. 5th DCA 1987), review denied, 520 So.2d 586 (Fla. 1988), the Fifth District Court of Appeal addressed the same issue as follows:
In determining whether long-arm jurisdiction is appropriate in a given case, two inquiries must be made. First, it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the statute; and if it does, the next inquiry is whether sufficient "minimum contacts" are demonstrated to satisfy due process requirements.
(Citations omitted.)
As in the instant case, the plaintiff in Osborn v. University Society, Inc., 378 So.2d 873 (Fla.2d DCA 1979), sought to obtain jurisdiction over a nonresident debtor on allegations that there was a breach of contract to pay the plaintiff money. The Second District Court of Appeal explained:
Section 48.193(1)(g), Florida Statutes (1977), provides that a person is subject to the jurisdiction of the court if he "[b]reaches a contract in this state by failing to perform acts required by the contract to be performed in this state." In Madax International Corp. v. Delcher Intercontinental Moving Services, Inc., 342 So.2d 1082 (Fla.2d DCA 1977), our court in considering the reach of this section stated that where there is an express promise to pay and the contract does not state a place of payment, the debtor must seek the creditor and thus the breach occurs where the creditor is domiciled. In light of the principle announced in Madax, a literal reading of the statute suggests that the court had jurisdiction over the Society in this case.
Nevertheless, in cases involving jurisdiction over nonresidents, there are constitutional issues which we must also consider. A court may acquire personal jurisdiction over a nonresident only if the nonresident has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'"

International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). Thus, under a given factual situation, even though a nonresident may appear to fall within the wording of a long arm statute, a plaintiff may not constitutionally apply the statute to obtain jurisdiction in the absence of the requisite minimum contacts with the forum state. Harlo Products Corp. v. Case Co., 360 So.2d 1328 (Fla. 1st DCA 1978); Jack Pickard Dodge, Inc. v. Yarbrough, 352 So.2d 130 (Fla. 1st DCA 1977).
Id. at 874.
We approve of the foregoing analyses in Scordilis, Unger, and Osborn. The mere proof of any one of the several circumstances enumerated in section 48.193 as the basis for obtaining jurisdiction of nonresidents does not automatically satisfy the due process requirement of minimum contacts. We do recognize, however, that implicit within several of the enumerated circumstances are sufficient facts which if proven, without more, would suffice to meet the requirements of International Shoe Co.
Our task does not end here because there must be a disposition of the instant case. With one notable exception, previous decisions of the district courts of appeal have outlined the procedure to be followed in cases such as this. Initially, the plaintiff may seek to obtain jurisdiction over a nonresident defendant by pleading the basis for service in the language of the statute without pleading the supporting facts. Fla.R.Civ.P. 1.070(i); Jones v. Jack Maxton Chevrolet, Inc., 484 So.2d 43 (Fla. 1st DCA 1986). By itself, the filing of a motion to dismiss on grounds of lack of jurisdiction over the person does nothing more than raise the legal sufficiency of the pleadings. Elmex Corp. v. Atlantic Fed. Savings & Loan Ass'n, 325 So.2d 58 (Fla.1st DCA 1976). A defendant wishing to contest the allegations of the complaint concerning jurisdiction or to raise a contention of minimum contacts must file affidavits in support of his position. The burden is then placed upon the plaintiff to prove by affidavit the basis upon which jurisdiction may be obtained. Elmex Corp. In most *503 cases, the affidavits can be harmonized, and the court will be in a position to make a decision based upon facts which are essentially undisputed. However, the question remains with respect to what should be done if the relevant facts set forth in the respective affidavits are in direct conflict. There is no Florida decision on this question, and the instant case highlights the dilemma.
In his affidavit, Parthenais stated that he had been contacted by Venetian at his place of business in Gainesville, Florida, and requested to investigate a large receivable owed to Venetian. He said that he and Venetian made an oral agreement that he would investigate the collectibility of the receivable in Florida, New York, and Canada and such other locations as might be required. It was agreed that Venetian would pay him at his business location in Alachua County, Florida. He further stated that he had performed services and incurred expenses in Florida, Canada, and New York. Parthenais also filed a supporting affidavit of Pierre Patenaude who was president of Venetian when the transaction in question took place. Patenaude said that in March of 1987 Venetian contacted Parthenais at his place of business in Alachua County and engaged his services to advise Venetian with respect to a large delinquent account due the company. He said that it was agreed that Parthenais would submit his statement and that Venetian would send its payment to Parthenais' place of business in Alachua County.
Venetian filed an affidavit of its president, Antoine Bertrand, stating that Venetian was a Canadian corporation which does no business in Florida. Bertrand said that Venetian did discuss with Parthenais a delinquent account which was located in New York. All discussions concerning the account took place in New York and Montreal, and no discussions with Parthenais took place in Florida. He further stated that Venetian never reached any agreement with Parthenais, much less an agreement to pay any money in Florida.
It is evident that these affidavits cannot be reconciled. We believe that the facts set forth in Parthenais' affidavits would be sufficient to establish Venetian's requisite minimum contacts with the state. On the other hand, Venetian denies that the parties reached any agreement whatsoever. Furthermore, we do not believe that the mere failure to pay money in Florida, standing alone, would suffice to obtain jurisdiction over a nonresident defendant.[1]See Unger v. Publisher Entry Service, Inc., 513 So.2d 674 (Fla. 5th DCA 1987), review denied, 520 So.2d 586 (Fla. 1988). Therefore, we hold that in cases such as this, the trial court will have to hold a limited evidentiary hearing in order to determine the jurisdiction issue.
We disapprove the decision in Engineered Storage and quash the decision below.[2] We remand the case with directions that the trial judge hold an evidentiary hearing on the issue of jurisdiction over Venetian.
It is so ordered.
*504 EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT and KOGAN, JJ., concur.
NOTES
[1] To put this statement in perspective, consider a scenario in which a New York company telephones a Florida resident and convinces him to buy a $5 widget. The Florida resident returns the widget without payment because it does not work. Surely, it could not be said that the Florida resident had sufficient minimum contacts with New York such that he should reasonably contemplate being haled into court there to defend against a suit for nonpayment.
[2] We note that some of the earlier First District Court of Appeal's decisions are inconsistent with its position in the instant case. Harlo Products Corp. v. J.I. Case Co., 360 So.2d 1328 (Fla. 1st DCA 1978); Jack Pickard Dodge, Inc. v. Yarbrough, 352 So.2d 130 (Fla. 1st DCA 1977). In each of these cases the complaint contained allegations sufficient to bring the defendant within the scope of section 48.193. However, the court concluded that the facts showed that the defendant had insufficient minimum contacts with the state. The statute was held unconstitutional in its application to the facts of the case. These decisions have the same practical effect as the one we reach today. Rather than holding the statute unconstitutional as applied, we have chosen to hold that the statute extends only to the limits of the due process clause. See Burger King v. Rudzewicz, 471 U.S. 462, 470 n. 12, 105 S.Ct. 2174, 2181 n. 12, 85 L.Ed.2d 528 (1985).